UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY BROWN, **Plaintiff,** v. UNIVERSITY OF ILLINOIS, **Defendant.** | No. 10 C 6104 Magistrate Judge Mary M. Rowland |

## ORDER

Plaintiff's Motion to Conduct Limited Discovery [243] is **DENIED**.

## STATEMENT

Plaintiff requests limited discovery regarding the November 1, 2007 salary increases and the performance appraisals that were used to award them. (Dkt. 243 at 1). Plaintiff contends that he is entitled to search for any possible discriminatory bias in the 2006 (dated Spring 2007) performance evaluations and the performance evaluation process. (*Id.* 5).

In a previous lawsuit by Plaintiff against Defendant's predecessor, Plaintiff alleged a discriminatory pay system. *Brown v. Ill. Dep't of Nat'l Res.*, No. 07 C 7080, at ¶ 17 (N.D. Ill. filed Aug. 8, 2008) (*Brown I*) (Zagel, J.). In granting summary judgment, Judge Zagel—later affirmed by the Seventh Circuit—found that Plaintiff had failed to make out a prima facie case of discrimination for any discrete acts that took place between September 12, 2006, and February 9, 2008. *Brown v. Ill. Dep't of Nat'l Res.*, No. 07 C 7080, 2011 WL 5403466, at *1–3 (N.D. Ill. Nov. 8, 2011), *aff'd*, 519 F. App'x 930 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 829 (2013).

In the instant lawsuit, Plaintiff again alleges a discriminatory pay system, along with illegal discharge based on his September 2008 termination. (Compl. ¶ 13; Dkt. 53 at 1). The District Court found that to the extent Plaintiff is challenging conduct which occurred between September 12, 2006, and February 9, 2008, "those claims are indeed barred by res judicata." (Dkt. 53 at 5). Accordingly, this Court has repeatedly (a) limited discovery on Plaintiff's *disparate pay claim* to the period of February 9 through September 30, 2008; and (b) allowed discovery related to performance appraisals prior to February 2008 only if reasonably related to Plaintiff's *termination claim* and only with regard to those persons similarly situated to Plaintiff. (*See, e.g.*, Dkt. 137 at 1–2; Dkt. 152 at 2–3; Dkt. 164 at 1–2; Dkt. 217 at 1).

1

Discovery in this matter closed on June 30, 2014. (Dkt. 206). Within weeks, Plaintiff filed a motion to reopen discovery, arguing that he should be permitted to discover (1) salaries and salary histories for all WMRC personnel and (2) all performance evaluations for all personnel, not just those previously determined to be similarly situated. (Dkt. 221 at 5). The Court denied Plaintiff's request, but allowed Plaintiff to depose Ms. Kate Day, Defendant's former human resource manager, who Plaintiff had failed to depose during the course of discovery. Plaintiff's deposition of Ms. Day was limited to issues addressed in a July 11, 2014 affidavit signed by Ms. Day and certain salary related exhibits that had been produced during the course of discovery. (Dkt. 230).

The Plaintiff's current motion requests the Court to reconsider its previous refusal to reopen discovery. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see Keene Corp.*, 561 F. Supp. at 665 ("Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion."). "A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *Ahmed*, 388 F.3d at 249 ("It's as if the movant, when he appealed, had filed two copies of his appeal brief, and when his appeal was rejected [he] asked us to read the second copy.").

### A. Plaintiff's Request To Reopen Discovery To Discover Salaries and Salary Histories For All WMRC Personnel.

Plaintiff contends that "newly discovered evidence" demonstrates that "Defendant concealed the fact the 2006 performance appraisals were used to award different salary increases in January 2008."[1] (Dkt. 243 at 1). He asserts that Ms. Day testified that Plaintiff was awarded a much smaller salary increase as a result of his

---

[1] Plaintiff argues that Judge Zagel was not aware of this information when he granted summary judgment in *Brown I*. (Dkt. 243 at 1, 3). Defendant responds that evidence of Plaintiff's 2006 and 2007 performance appraisals were submitted to Judge Zagel during summary judgment briefing, and the Seventh Circuit specifically noted Plaintiff's 2006 performance review in discussing his retaliation claim. (Dkt. 246 Exs. 1–3). This Court has no jurisdiction to determine—and will not weigh in on—whether Judge Zagel was "aware of the fact that the 2006 performance evaluations were used to award different levels of salary increases." (Dkt. 243 at 3). Nor will this Court opine on whether "Defendant engaged in fraudulent concealment" in *Brown I*. (Dkt. 250 at 1).

2006 performance evaluation rating. (*Id.* 3). First, this is not new evidence. Prior to her deposition, Ms. Day attested that the January 2008 salary increases to P2 staff members were based on their 2006 (dated Spring 2007) performance evaluation scores. (*Id.* 6; *see* Dkt. 224 Ex. 1 at ¶¶ 11, 13, 14, 25). Second, as this Court has stated repeatedly, the *pay increases* prior to February 2008 are not relevant to Plaintiff's disparate pay claim.[2] Finally, to the extent the pre-2008 *performance evaluations* have any relevance to his termination claim, Plaintiff has had ample opportunity to conduct discovery into them.

**B. Plaintiff's Request To Reopen Discovery To Discover All Performance Evaluations For All Personnel, Not Just Those Previously Determined To Be Similarly Situated.**

Plaintiff also contends that the Court should reopen discovery so that he can obtain the performance evaluation ratings and numeric scores for *all* WMRC staff members. (Dkt. 243 at 5). He argues that he "should be allowed to fully litigate his claim that he was paid differently from other WMRC staff, not just different from other P2 Group staff." (*Id.*). Accordingly, he asserts that he should have "all non-management staff salaries and salary histories for similarly-educated, similarly-experienced WMRC employees." (*Id.*). Plaintiff has repeatedly made this argument to no avail. As the Court has previously ruled, Plaintiff has not demonstrated that these other, non-P2 staff members were similarly situated to him. (*See, e.g.* Dkt. 164; Dkt. 217). He has not identified "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008).

The Court is mindful of Plaintiff's pro se status and of the challenges facing a pro se litigant. However, Plaintiff has spent much of his energy in this case attempting to conduct discovery into matters already resolved in *Brown I*. Plaintiff has had more than sufficient time and opportunities to discover information reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Plaintiff's Motion to Conduct Limited Discovery is denied.

Dated: October 7, 2014                                        Mary M Rowland

---

[2] Plaintiff has been provided with salary information for all similarly situated employees effective February 9, 2008, to support his claim that Defendant had a discriminatory pay system between February 9 and September 30, 2008. (*See, e.g.*, Dkt. 224 Ex. 1 at ¶ 7).